1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF DELAWARE

3                              -  -  -

4    IMS HEALTH INCORPORATED,         )       Civil Action
                                      )
5                  Plaintiff,         )
                                      )
6         v.                          )
                                      )
7    SYMPHONY HEALTH SOLUTIONS        )
     CORPORATION, SOURCE HEALTHCARE   )
8    ANALYTICS, LLC, AND IMPACTRX,    )
     INC.,                            )
9                                     )
                   Defendants.        )       No. 13-2071-GMS
10                             -  -  -

11                       Wilmington, Delaware
                      Thursday, September 4, 2014
12                           11:40 a.m.
                        Telephone Conference
13                             -  -  -

14   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15   APPEARANCES:

16           MICHELLE NEROZZI-ANKENBRAND, ESQ.
             Fish & Richardson, P.C.
17                    -and-
             SCOTT A. ELENGOLD, ESQ.
18           Fish & Richardson, P.C.
             (Washington, D.C.)
19
                              Counsel for Plaintiff
20
             BETH MOSKOW-SCHNOLL, ESQ.
21           Ballard Spahr LLP
                      -and-
22           BRIAN W. LaCOURTE, ESQ., and
             KIMBERLY A. WARSHAWSKY, ESQ.
23           Ballard Spahr LLP
             (Phoenix, AZ)
24
                              Counsel for Defendants
25

1          THE COURT:  Sorry for the delay, counsel.  Who

2     is on the line for the plaintiff?

3          MS. NEROZZI-ANKENBRAND:  Good morning, Your

4     Honor.  This is Michelle Ankenbrand from Fish & Richardson

5     on behalf of IMS Health Incorporated.  And I have with me on

6     the line Scott Elengold, my colleague also from Fish &

7     Richardson.

8          I just wanted to let the Court know that I am

9     calling from out of the country.  I will be making the

10    argument today, but to the extent I drop off for some

11    reason, my colleague, Mr. Elengold, will be able to take

12    over in my place, if that is okay.

13         THE COURT:  That is fine.  Thank you.

14         MS. NEROZZI-ANKENBRAND:  Thank you, Your Honor.

15         MR. ELENGOLD:  Good morning, Your Honor.

16         THE COURT:  Good morning.

17         On the other side?

18         MS. MOSKOW-SCHNOLL:  Your Honor, Beth

19    Moskow-Schnoll from Ballard Spahr.  With me are Brian

20    LaCorte and Kim Warshshawsky.  We represent Sympathy Health,

21    Source Healthcare Analytics, and Impactrx.

22         MR. LaCORTE:  Good morning, Your Honor.

23         THE COURT:  Good morning.

24         Let's start out.  Have any of the issues been

25    resolved that are captioned as plaintiff's issues or

1    defendants' issues?

2           MS. NEROZZI-ANKENBRAND:  Your Honor, none of the

3    issues have been resolved to date.  But if Your Honor would

4    agree, and with the Court's indulgence, we think to use the

5    best use of the Court's time, at least in terms of

6    plaintiff's issues, we would like to address Issue No. 2

7    first, and then Issue No. 5, and finally, if time permits,

8    we would address Issues 1, 3 and 4 together.

9           THE COURT:  Issue No. 2 first.

10          MS. NEROZZI-ANKENBRAND:  Correct, and then Issue

11   No. 5, the last of the plaintiff's issues, and then 1, 3 and

12   4 together.

13          THE COURT:  As to the defendants' issues, have

14   any of those been resolved?

15          MS. MOSKOW-SCHNOLL:  Your Honor, regarding

16   plaintiff's Issues 3 and 4, we wrote them a letter on August

17   27th, which was the day before the agenda was due, saying

18   that we have no problem in supplying -- regarding the source

19   code, the source code we asked them to provide proposed

20   dates for inspection.  And regarding 33(d), we asked when

21   they would be prepared to do the same so we could

22   simultaneously exchange those documents -- sorry, the

23   identification of those documents.  We haven't heard back

24   from them.

25          We don't believe that we are in dispute about

1      that.   It's just a question of getting dates from them.

2                   THE COURT:   This is as to 4, Ms. Moskow-Schnoll?

3                   MS. MOSKOW-SCHNOLL:   It's regarding 3 and 4.

4                   THE COURT:   3 and 4.

5                   MS. MOSKOW-SCHNOLL:   Of their issues, which

6      actually mirrors ones that we raised with our issues as

7      well.

8                   THE COURT:   I see what you are saying.   Okay.

9                   Ms. Ankenbrand.

10                  MS. NEROZZI-ANKENBRAND:   Your Honor, we did

11     receive a letter from them the night before the discovery

12     responses were due, but their response to our inquiries

13     about source code and identifying documents pursuant to Rule

14     33(d), their responses were vague.   They had said that they

15     were preparing supplemental responses to incorporate

16     references to specific documents, but did not provide us

17     with a date certain when they would supplement.   And they

18     also asked for concurrent supplementation by plaintiff when

19     to date they have never even identified any of our

20     interrogatory responses as being deficient.   Instead, they

21     referred us to a letter that would be forthcoming, which we

22     have never received.

23                  So with respect to the Rule 33(d) issue, we do

24     not believe that exchange should be concurrent of responses

25     to specific interrogatories, because they have never

1    identified any that they believe are deficient that we

2    responded to.

3                 And with respect to the source code, they said

4    that they had some source code available, and that they were

5    continuing to gather source code, but did not provide a date

6    certain by which all of their source code would be available

7    for inspection.

8                 As the Court likely knows, source code review is

9    a costly and time-consuming project.  We just don't want to

10   be in a situation where we are undertaking that process

11   multiple times.

12                THE COURT:  Ms. Moskow-Schnoll, do you have any

13   reaction that you care to put on the record?

14                MS. MOSKOW-SCHNOLL:  Yes, Your Honor.  We said

15   that we can provide them with what we have.  We are

16   continuing to gather, and if they gave us a date we could

17   provide it to them.  We can resolve this by saying in about

18   30 days they can come out and look at our source code.

19                THE COURT:  So we are not talking about the

20   33(d) issue, just the source code issue.  Ms. Ankenbrand,

21   what is your reaction to that proposal?

22                MS. NEROZZI-ANKENBRAND:  Your Honor, with that

23   proposal, that we have the source code within 30 days, then

24   the issue is resolved.  We just were seeking a date certain

25   when we could review all of their source code.

```
 1                    THE COURT:  So we will remove Bullet No. 4 from

 2      plaintiff's and Bullet No. 3 from defendants' issues.

 3      Correct?

 4                    MS. NEROZZI-ANKENBRAND:  Correct, Your Honor.

 5                    THE COURT:  I am sorry.  Bullet No. 4.  Right,

 6      Ms. Moskow-Schnoll?

 7                    MS. MOSKOW-SCHNOLL:  Right.  Bullet No. 4 on

 8      ours, it also incorporates 3 on theirs, that is the 33(d)

 9      issue.  We put those in one.  On that we think they have

10      jumped the gun.  We have never refused to provide the

11      information.  Our point was just, if you are asking it from

12      us, then we would like it from you.  Why don't we just

13      mutually exchange them, supplemental interrogatory

14      responses, with pinpoint cites, and we could do that in

15      three weeks.

16                    THE COURT:  How about that, Ms. Ankenbrand?

17                    MS. NEROZZI-ANKENBRAND:  Your Honor, I will say

18      that we have already provided I think for all but one of

19      defendants' interrogatories pinpoint cites under Rule 33(d).

20      Again, because they have never specifically pointed out any

21      interrogatories that they believe we haven't responded to, I

22      don't know specifically which interrogatories they are

23      referring to.  But we are willing to supplement them

24      accordingly.

25                    THE COURT:  Would this issue, these mirror-image
```

```
 1    issues, 33(d) issues, benefit from further discussion

 2    between lawyers?

 3              MS. MOSKOW-SCHNOLL:  I believe we can work that

 4    out.

 5              MS. NEROZZI-ANKENBRAND:  Your Honor, I think we

 6    can.  But I will say that this issue sort of blends into

 7    some of the other issues we raised, specifically, getting

 8    information from defendants prior to the beginning of

 9    Markman briefing.

10              THE COURT:  But at least insofar as the 33(d)

11    issue is concerned, you think, Ms. Ankenbrand, that you and

12    Ms. Moskow-Schnoll, you and your colleagues and Ms.

13    Moskow-Schnoll and her colleagues can work this out?

14              MS. NEROZZI-ANKENBRAND:  Yes, I think we can.

15              THE COURT:  Okay.  Let's scratch No. 3 off the

16    plaintiff's, and that's incorporated, 33(d) is incorporated

17    in No. 4 of yours, Ms. Moskow-Schnoll.  Is that correct?

18              MS. MOSKOW-SCHNOLL:  Yes, Your Honor.

19              THE COURT:  Let's go back to the beginning.  Ms.

20    Ankenbrand, you want to address Bullet No. 2 first?

21              MS. NEROZZI-ANKENBRAND:  Correct, Your Honor, if

22    that's okay with the Court.

23              THE COURT:  Sure.

24              MS. NEROZZI-ANKENBRAND:  Okay.  So --

25              MS. MOSKOW-SCHNOLL:  I was going to say that
```

```
 1      Brian LaCorte will address that for the defendant.
 2              MS. NEROZZI-ANKENBRAND:  Your Honor, as you can
 3      see from the agenda, our Issue No. 2 seeks responses to our
 4      interrogatories, including contention interrogatories and
 5      interrogatories seeking information about defendants'
 6      accused products, and the contention interrogatories being
 7      defendants' invalidity and noninfringement contentions.  We
 8      would like to have responses to those by September 12, which
 9      is just prior to the September 16th due date in the
10      scheduling order for submission of the joint claim chart to
11      the Court.
12              Specifically, I guess I will say first that we
13      did serve discovery on defendants back in April, on April
14      18th.  And we served them with contention interrogatories at
15      that time.  They responded on June 2nd, and in their
16      response to interrogatories, and more specifically those
17      seeking invalidity and noninfringement contentions, as well
18      as information about the accused product, defendants stated
19      that they would provide responses to the interrogatories
20      after IMS identifies both the accused products and the
21      claims of each patent in suit that defendants are alleged to
22      infringe.
23              IMS Health did exactly that.  We timely served
24      infringement contentions on defendants on July 23rd.  And we
25      also included detailed claim charts.  In accordance with the
```

1    interrogatory responses we originally received from

2    defendants on June 2nd, they did not subsequently supplement

3    their responses to provide IMS Health with noninfringement

4    or validity contentions, or information about the accused

5    products, and still have not done so.  Instead, they

6    produced documents.

7            But we believe that we should be able to receive

8    the same kind of contentions they received from us.  They

9    have received our infringement contentions.  At this time,

10   we should be able to receive their invalidity and

11   noninfringement contentions.

12           We wrote them several letters about this.  And

13   then again the night before the discovery agenda letter was

14   due to the Court, they sent us a letter abandoning their

15   prior agreement to supplement, and asserting for the first

16   time that contention interrogatories are premature.  And

17   they stated for three reasons.  First, they said that their

18   motions to dismiss were still pending, so they haven't

19   answered the complaint or asserted any affirmative defenses

20   or counterclaims yet.  They also said that the Court hasn't

21   construed the claims of the patent, so contentions are

22   premature.  And finally, that the contention interrogatories

23   prematurely seek expert opinions.

24           IMS believes that all of these reasons are

25   improper.

1            First, the lack of an answer we do not think is

2     an excuse to fail to provide contentions.  They did not

3     move, defendants did not move to dismiss direct infringement

4     claims.  And they can file an answer at any time, although

5     they are not required to.  And also, the Court stated during

6     the scheduling conference that even if it was inclined to

7     grant defendants' motion to dismiss on indirect infringement

8     certain of their claims, that grant would most likely would

9     lead to amend the complaint as dictated by Third Circuit

10    law.

11            Also, I would just point out that in the joint

12    status report leading up to the Rule 16 conference,

13    defendants put forth a position that discovery was best

14    suited until after the Court ruled on their motions to

15    dismiss.  During the actual Rule 16 conference, the Court

16    denied that and allowed discovery to go forward.

17            Additionally, we believe that claim construction

18    is not a reason to delay contentions.  In fact, we think

19    quite the opposite is true.  One of the key reasons for the

20    Markman process is to focus and crystallize the parties'

21    infringement and validity disputes.  That is why we provided

22    in good faith the defendants with timely infringement

23    contentions.  Now we are not getting the same thing in

24    return.

25            One thing we are concerned about is that we are

1   going to be back in front of the Court early next year

2   asking for clarification of claim constructions and raising

3   new terms that have become points of dispute, because prior

4   to claim construction we had no noninfringement or

5   invalidity contentions.

6            In fact, we think that the defendants' approach

7   here defeats many of the benefits of Your Honor's general

8   practice to hold an early Markman hearing and issue a

9   Markman order shortly thereafter.

10           I also would add that the Court is well aware

11  that parties often shape their proposed claim constructions

12  around infringement or noninfringement and validity or

13  invalidity arguments.  Right now IMS Health is operating

14  within a vacuum because we don't have any of those

15  contentions from defendants.

16           Finally, I would just address the point in their

17  letter that contention interrogatories prematurely seek

18  expert opinions.  In fact, contention interrogatory

19  responses are not for after or until expert discovery.

20  Federal Rule of Civil Procedure 33, which is specifically

21  directed to interrogatories, expressly states that an

22  interrogatory is not objectionable because it asks for a

23  contention that relates to fact, which is what we are asking

24  for.

25           With that, I think I would just reiterate again

1    that we would ask the Court to order defendants to provide

2    their noninfringement and invalidity contentions by

3    September 12, so that the parties can meaningfully discuss

4    and narrow the claim construction dispute by the scheduling

5    order September 16 due date for the joint claim charts.

6                THE COURT:  Mr. LaCorte.

7                MR. LaCORTE:  Good morning, Your Honor.

8                THE COURT:  Good morning.

9                MR. LaCORTE:  I would like to clarify the timing

10   of what's been presented, because it does bear on the

11   exchange of contentions.

12                The case was filed in December of last year by

13   IMS.  Shortly into the commencement of discovery, we asked

14   IMS to clearly identify which claims of three patents were

15   in issue, so that would guide the parties in the early

16   process of discovery.  We also asked IMS to use the Court's,

17   this Court's specific contention phases so that we could

18   have a clear understanding of each side's contentions early

19   in the case without trying to go through the entire

20   discovery process.  IMS refused to do that.

21                So it wasn't until seven months into the case,

22   Your Honor, that we even knew which particular claims of

23   three patents among several claims were even being asserted.

24   And any level of detail as to what those infringement

25   positions are, even that is lacking.  So as of late July is

1    the first time, Your Honor, that Symphony Health even knew

2    which particular claims were being asserted, because IMS

3    said, no, you will find out when we respond to your

4    discovery.

5              So we have now had, just for five weeks, the

6    specific claims that are in issue in the case, and the

7    specific infringement positions, albeit vaguely presented,

8    in charts that simply parrot the claim language and cite

9    hundreds of Bates numbers of our documents without any

10   further analysis.

11             So we are five weeks into that.  We have

12   disclosed our expert.  We have disclosed our claim

13   construction positions.  And we have said to IMS that we are

14   willing to respond with contentions.  But we are a couple

15   three months away from Markman, and we simply want to

16   account for the Court's claim constructions in our

17   contentions, particularly our noninfringement positions,

18   because those are, in essence, taking the Court's

19   constructions and addressing the specific nuances of where

20   we don't read on the patents.

21             We are not trying --

22             THE COURT:  Isn't that sort of using the Court's

23   construction as sort of an advisory opinion?  Your

24   contentions are what they are.  Yes?  No?  Maybe, Mr.

25   LaCorte?

1              MR. LaCORTE:  No.  Our contentions would

2    incorporate the Court's construction.  That would --

3              THE COURT:  It doesn't sound like that's an

4    efficient use of my time, and yours as well, or the

5    plaintiff's.  But you go ahead.  Let me continue to hear you

6    out.

7              MR. LaCORTE:  Well, Your Honor, we have

8    exchanged claim constructions.  It's not that we don't have

9    claim construction positions.  We certainly have one or two

10   terms that IMS has asserted and we have those that we have

11   asserted.  As I said, we have under way --

12             THE COURT:  Understanding, as I do, I think,

13   your complaint about the delay, apparent delay by the

14   plaintiffs -- and I am not going to get into a tit for tat

15   here, but I am going to accept that assertion for now, Mr.

16   LaCorte -- what is the hindrance to moving forward, even in

17   light of that history, and exchanging infringement and

18   invalidity contentions prior to the Markman hearing, or if

19   not by September 12th?

20             MR. LaCORTE:  I think September 12th would be

21   difficult, Your Honor, in light of the condensed time period

22   we have to respond to the specific claims asserted.  We can

23   certainly do so before the Markman briefing.

24             THE COURT:  Okay.  Ms. Ankenbrand.

25             MS. NEROZZI-ANKENBRAND:  Your Honor, I would

1    like to address the last point first.

2           I believe you heard Mr. LaCorte say that they

3    have had our infringement contentions since July 23rd.  So

4    to not be able to address them by September 12th, which is

5    by my count almost a month and a half since they have had

6    them, I don't understand why defendants are not in a

7    position to do this.

8           THE COURT:  Let me just be the devil's advocate

9    a little bit here, and I think Mr. LaCorte is certainly

10   capable of speaking for himself, but you did hear him state

11   that your submissions were vague, and referenced numerous

12   Bates numbers, and I guess what Mr. LaCorte is saying it

13   made it difficult to respond.

14          MS. NEROZZI ANKENBRAND:  Your Honor, if I could

15   address that.

16          On this call right now is the first time we are

17   ever hearing that assertion.  So if they believed they were

18   vague when we served them on July 23rd -- and I also take

19   issue with Mr. LaCorte's implication that our infringement

20   contentions were not timely, because they were timely

21   served.  Neither party asked the Court during the scheduling

22   conference to incorporate the default standard into the

23   schedule.

24          And we answered their interrogatories asking for

25   our infringement contentions within the proper time to

1    respond to them after we were served with them.

2              But putting that aside, defendants have never

3    complained or asserted that our positions were vaguely

4    presented until right now today.

5              THE COURT:  So your reaction to his proposal

6    that they be provided before the initiation of Markman

7    briefing, you feel that's too late.

8              MS. NEROZZI-ANKENBRAND:  We do think it's too

9    late because the whole point is to narrow the issues for

10   claim construction.

11             THE COURT:  I agree with that.  Go ahead.

12             MS. NEROZZI ANKENBRAND:  And we need to agree on

13   the terms to present to the Court by September 16th and

14   present them in the joint claim chart.  It is our position

15   in order to do so we need contentions from the defendants as

16   to what their positions are.

17             We are not disputing the fact that they can

18   supplement them after claim construction.  We just need to

19   know their contentions before the process begins.

20             THE COURT:  I understand.

21             Mr. LaCorte, go ahead.

22             MR. LaCORTE:  Your Honor, we have exchanged

23   claim construction positions.  I have to say, we tried to

24   get a contention phase shortly into the portion of this

25   case.  So it's not that we waited until June to think about

1    contentions.  We tried to approach IMS, and it was by lack

2    of some sort of default entry to your order, and that

3    happened, that it did not occur.  And we expected to do

4    contentions --

5             THE COURT:  That is not exactly fair, Mr.

6    LaCorte, because I have a process that differs, and has in

7    the past, and perhaps is evolving more closely, and disputes

8    like this may help that evolution, away from the default

9    standard, because I am not a fan of Local Rules.

10            And the default standard has been

11   misinterpreted, quite frankly, by the Patent Bar nationally

12   to mean that Delaware now has Local Rules.  We don't.  We

13   have four independent Judges who manage their cases in the

14   way that they see fit.

15            That's not exactly accurate or fair, what you

16   say.

17            And I don't want to spend all morning and

18   afternoon on this one issue, because there are a number of

19   issues we still need to talk about.  I am just a little at

20   sea as to why you feel you can't respond in kind, or maybe

21   not in kind, if it is vague like you say, but respond with

22   infringement and invalidity contentions by a deadline that

23   would do exactly what Ms. Ankenbrand suggests should be

24   done.  That is crystalize and focus the field of dispute for

25   the Court.

1          MR. LaCORTE:  Yes, Your Honor.  We can respond

2    before the Markman briefing.

3          The process of the contentions is the problem.

4    The contentions are vague.  We are trying to read tea leaves

5    in all the different documents that are simply cited as the

6    basis for the infringement.

7          THE COURT:  I don't want you reading tea leaves.

8    I want counsel to be able to meaningfully discuss things.

9          Is this not something that would be better

10   spent, time-wise -- and I am being very parochial in this

11   and mindful of my time -- wouldn't it be better for counsel

12   on both sides to sit down in a room, or do whatever you do,

13   and talk, so you are not reading tea leaves?  Ms.

14   Ankenbrand?

15         MS. NEROZZI-ANKENBRAND:  Your Honor, I

16   definitely agree with that.  That is pretty much the impetus

17   for many of the disputes that plaintiffs have raised today,

18   is that we haven't been able to get defendants to sit in a

19   room or get on the phone and communicate these issues to us.

20   Like I said, today is the first time I am hearing that

21   defendants believe that our infringement contentions were

22   vaguely presented in our claim chart.

23         MR. LaCORTE:  Your Honor, we have had numerous

24   meet-and-confer sessions.  Ms. Moskow can speak to that as

25   well.

1          This notion that the defendants have not

2     cooperated or communicated is just inaccurate.

3          THE COURT:  Mr. LaCorte, I am not going to

4     assign blame or take sides in this.  I don't have time to

5     get into the weeds of that issue.  What I will require is

6     that, moving forward, counsel arrange a time post haste to

7     either get on the phone or get in somebody's conference room

8     and put a finer point on these contentions, so that you can

9     feel comfortable that you can properly address them in your

10    submissions, both the final claim chart and the briefing.

11         That is going to need to be done rather quickly,

12    I think, in order for you to comply -- this is directed at

13    both sides, with the schedule that is in place -- and not

14    defeat -- I am not going to hear you again later on, after

15    Markman.  Once the order issues, I am not going to hear you

16    to ask for a reconsideration or to tell me that, Micro 02,

17    Judge, we have got a dispute that you didn't crystallizes

18    before.  Mandamus me.  Take me up.  Okay?

19         Am I making myself clear?

20         MR. LaCORTE:  Yes.

21         MS. NEROZZI-ANKENBRAND:  Yes, Your Honor.

22         THE COURT:  This is directed at both sides.  I

23    don't have time for this .  Too many cases, counsel.

24         Let's go on to the next issue.

25         MS. NEROZZI-ANKENBRAND:  Sure, Your Honor.

1              The next issue is Bullet Point 5 on plaintiff's

2    list, which relates to discovery regarding Count Three of

3    plaintiff's complaint, which the Court previously stayed

4    pending the Supreme Court's decision in the Alice versus CLS

5    Bank ruling.

6              Again, in the joint status report, defendants

7    sought a stay of that discovery pending the Court's ruling

8    on their motion to dismiss Count Three.  And during the

9    scheduling conference, Your Honor again denied their request

10   for a stay, but instead suggested that the parties stage

11   discovery pending the decision in the Alice case, which

12   everybody expected in June.  And at that time the Court

13   indicated that the parties should meet and confer about how

14   to handle discovery in light of the Supreme Court's opinion.

15             The opinion did issue in June.  And we reached

16   out to defendants after the decision and told them that it

17   was our opinion that the decision did not change the

18   landscape with a blanket prohibition on certain types of

19   patent claims, as some commentators had predicted, but that

20   it instead confirmed the Supreme Court's earlier test for

21   patentability.

22             And it reaffirmed our position that defendants

23   are not entitled to dismissal of the claims related to that

24   patent.

25             We also subsequently served discovery related to

1    the patent, including infringement contentions, and

2    identified accused products, several of which we had

3    originally identified in the complaint, and produced

4    documents related to the third patent.

5              When defendants responded, they again took the

6    position that discovery should be stayed until the Court

7    issues its ruling on their motions to dismiss.

8              By refusing to engage in discovery, they have

9    given themselves the stay that they requested initially and

10   that the Court denied.

11             So this issue is coming before Your Honor

12   because, again, we have claim construction coming up.  We

13   don't want to be back in front of the Court.  I will say

14   that in the interim, defendants have agreed to at least

15   provide us with claim terms for construction for the patents

16   at issue in Count Three.  But we have received no discovery

17   from them, no document production, no responses to

18   contentions.  And we would like discovery to go forward on

19   that claim.

20             THE COURT:  Mr. LaCorte.

21             MR. LaCORTE:  Your Honor, thank you.

22             We have had very meaningful discussions about

23   the impact of the CLS decision.  So I think it's fair to say

24   both sides had thoughtful discussions about the impact of

25   the decision on the pending motion and whether the pending

1    motion is in some way changed, stronger or weaker, as a

2    result of the CLS decision.  The reason we have suggested

3    that the parties do two things, one, file a brief

4    supplemental filing with the Court, if Your Honor would

5    consider it and find it helpful, on the impact of the CLS

6    decision on our motion.  And second, the defendants believe

7    respectfully, Your Honor, that the CLS decision in fact made

8    our motion stronger, not weaker.  And it did clarify the

9    Supreme Court's motivation to address abstract concepts with

10   a nuance of the novelty and/or conventional wisdom that may

11   be present in business method patents, which is precisely

12   the issue in the '578 patent.

13              I just have to say, we really feel our motion is

14   well taken.  It's not just a lingering 12(b) issue --

15              THE COURT:  But let's cut to the chase for a

16   moment, because this bleeds into your issue regarding

17   whether supplemental briefing would be helpful.  I am not so

18   sure that it would, with all due respect to lawyers, and I

19   mightily respect the role of lawyers in the adversary

20   process as advocates in helping judges, enabling judges to

21   make hopefully correct decisions.  We couldn't do it,

22   obviously, without good adversaries.  I am not so sure in

23   this case that I can't read Alice Corp v. CLS Bank as well

24   as any lawyer on this phone and figure it out in light of

25   what I know to be your positions on this particular motion.

1          I am not so sure that I want to accept your

2    invitation for supplemental briefing.  We can talk about

3    that in a moment.

4          I don't see why the fact that the motion is

5    extant, interfered with, as I think I recall intending, that

6    there be staged discovery aimed at enabling the case to move

7    forward and not stall dead in the water.  That was my intent

8    then, and it is today.

9          So, Mr. LaCorte, what are you going to do to

10   address the plaintiff's request?

11         MR. LaCORTE:  Well, the motion has been fully

12   briefed.  And we thought that it's a very viable issue in

13   the case.

14         THE COURT:  I am just talking about discovery

15   right now.

16         MR. LaCORTE:  Right, Your Honor.  Our thought

17   was that CLS just clarified the picture that discovery was

18   unnecessary --

19         THE COURT:  I am telling you that it is not

20   clear to me that discovery is unnecessary, and therefore, I

21   am ordering that discovery move forward.  You are not

22   reading between the lines here, Mr. LaCorte.

23         MR. LaCORTE:  I understand.  So we will proceed

24   with discovery, Your Honor.  We believe that the decision

25   enhanced our position.

1           THE COURT:  You have said that now three times,

2    Mr. LaCorte.  Don't be like a petulant child.  You have said

3    it three times.  I understand your point.  I have good

4    hearing.

5           MS. NEROZZI-ANKENBRAND:  Your Honor, if I may.

6    We would like to at least get some technical documents --

7           THE COURT:  Ms. Ankenbrand, I think I have

8    issued what should be sufficient guidance to both of you

9    that should enable your request to be further addressed

10   offline, with your counterparts, and should be met in light

11   of my comments.  Okay?

12          MS. NEROZZI-ANKENBRAND:  Thank you, Your Honor.

13          THE COURT:  Now, if I want additional help from

14   counsel, that is, additional argument, by way of

15   supplemental briefing on this particular issue, Mr. LaCorte,

16   I will issue an order directing the timing of that and the

17   number of pages.  It would likely be in the form of letter

18   briefing.  I would like some time -- it won't be a lot of

19   time, it will be very quickly -- to revisit your motion

20   again and decide whether I would benefit from that, those

21   additional submissions.  Okay?

22          MR. LaCORTE:  Understood.

23          THE COURT:  What's next?

24          MS. NEROZZI-ANKENBRAND:  Your Honor, I think,

25   with that, we will table Issue 1, which was the only issue

1       plaintiff had.

2                    THE COURT:  I think that's a real good idea, Ms.

3       Ankenbrand.

4                    What's next for defendants?  Anything?

5                    MR. LaCORTE:  Nothing else for the defendants,

6       Your Honor.

7                    THE COURT:  Counsel, I will be in touch with

8       about the CLS Bank issue.  Take care.

9                    (Counsel respond "Thank you, Your Honor.")

10                   (Conference concluded at 12:17 p.m.)

11                               -   -   -

12      Reporter:  Kevin Maurer

13

14

15

16

17

18

19

20

21

22

23

24

25